Our last case of the day is number 19-3067, United States v. Vederman, Mr. Roth and Mr. Zosmer. Mr. Roth? Thank you. May it please the Court. This is Yaakov Roth of Jones Day for the appellant Herb Vederman. I'd like to reserve a couple of minutes for rebuttal. You sure can. Okay, thank you. So I'd like to start, Your Honors, with the challenge to Vederman's convictions. And there's really only a single question here. Did the admitted error in the bribery jury instructions potentially contribute to the jury's verdict on the fraud counts that are at issue in this appeal? And I think the answer is clearly yes. And, in fact, I don't think the government's brief actually ever directly denies it. And so what I'd like to do is just lay out the path that the jury could have taken from the bribery instructions to the verdict on these counts that are now at issue. The first step in that sort of chain of reasoning is what the Court recognized last time, which is, based on the faulty instructions, the faulty definition of bribery, the jury could have concluded that the $18,000 payment from Vederman to Fatah was an illegal bribe. That is why the bribery counts have to be vacated. And then that has two implications for the jury's consideration of counts 19 and 20. First, if the $18,000 was a bribe, then Fatah lied by concealing that fact from the bank and by saying that the money came from a car sale. And so the finding of bribery satisfies the element of falsity for both of the two counts that we have now. But in the instructions on counts 19 and 20, the district courts have not used the words bribe or exchange or official act. That's correct. The jury instructions defining the elements of counts 19 and 20 were fine, and we're not challenging them. The problem is that the government argued that those elements of counts 19 and 20 were satisfied because of the illegal bribe. And so if the predicate finding that the $18,000 was a bribe, if that was tainted by the faulty instructions, then the jury could well have then used that finding to satisfy the elements of these two counts. But our court already has determined that there wasn't a spillover. So doesn't the prior opinion almost operate as the law of the case? I understand the standard review is a little different, right? But still, doesn't that finding really make it difficult for you to make that conclusion? I don't think so, Your Honor, at all. The prejudicial spillover challenge that the court considered last time and addressed was completely different. The challenge that the court addressed last time was, was there a prejudicial spillover from the RICO count to counts 19 and 20? And prejudicial spillover occurs when evidence is admitted as a result of an improper count that then paints the jury's consideration of another count. And the court said there was no evidence that came in as a result of the RICO count that would have affected the jury's consideration of counts 19 and 20. So there's no evidentiary spillover problem that we have to worry about. That is completely different from the challenge that we are arguing now, which is that the jury instructions on bribery led the jury, or potentially led the jury, to conclude that the $18,000 payment was a bribe. What about the fact that the jury instructions at least three times told the jurors to evaluate every count separately? You certainly have to evaluate each count separately, but the government's argument to the jury was that you can find that the elements of counts 19 and 20 were satisfied because the money was a bribe. So it was naturally a derivative type of theory of fraud. Now, bank fraud is not normally a derivative offense the way money laundering is, but here it was because of the way the government argued it to the jury. And I'm not making up this sort of chain of reasoning. This is what the government said, and I put the court to page 241 of the joint appendix. This is the closing argument where the government says, the $18,000 had nothing to do with the sale of a Porsche. The $18,000 was a bribe payment. So that's element one, falsity. If the money was a bribe, Fatah lied. And then there's a second element, both for count 19 and for count 20. The element's a little different, but for our purposes it gets the same place, which is, was the lie designed to mislead and influence the bank? Was it material to the bank, or was the lie intended for some other purpose? And on that too, the government's argument was, and this is at 245 of the joint appendix, the Fatahs could not qualify for the mortgage if Kuma had learned that the $18,000 was related to a bribery scheme or was criminal proceeds of any kind. And there was evidence in the record supporting that argument because the representative of Kuma said, well, if the money's illegal, we can't give the loan. And that is intuitive because if the money is illegal, it can be forfeited, and the bank's not going to lend based on that sort of unstable money. But all your points are relying on the government's argument, not an instructional error. No, no. Isn't it different? Because you just point us back to the government's arguments as support. How is that an instructional error, though? So the instructional error is in the definition of bribery. That's what the court held last time. What that means is that when the jury found that the $18,000 was a bribe, that finding is tainted by the instructional error. Mr. Roth, let's talk about materiality for a moment. I agree with Judge Schwartz that what you're saying does not plug into neither or the instructional error standard review. You're trying to fit a square peg into a round hole here. Your theory is that factually this might not qualify and be material to the loan because the jury might not have found the things that would be required for that. But then we're looking at, as Judge Schwartz said, the argument and the evidence. And what I want to know about materiality here is, Joint Appendix 208, the loan inspector is asked, if you knew that the explanation of the source of the funds was false, then you would not have given the loan. It doesn't matter whether the false explanation is a bribe legally or a bribe factually. If they're saying this came from a, you know, it's actually a sale of a Porsche and that, in fact, was not a sale of a Porsche, then that's material and that's the end of it. So on these facts, how does that shake our confidence in any way in the finding of materiality that I think is the linchpin of your argument? So I think we have two alternative arguments about how the instructional error might have led the jury off track. But just to respond to your question about materiality in particular, I don't think anyone would say that if Fatah had said, I got this money because I sold my Porsche and, in fact, he got it because he sold his Mercedes, that that would be material to the bank. It's just they don't care. Now, the representative of CUMA was specifically asked, if you knew, if you had learned that the money came from a criminal transaction, would you have been able to prove the mortgage? She said no. And then she was asked, well, what if the $18,000 had been a gift, just an outright gift? Would that have been acceptable from CUMA's standpoint? And she said it could have been, possibly, depending on documentation. Okay, but four lines, about six lines before that, she's asked if you'd given false information regarding the explanation for the source of the funds that were identified. Maybe you're right. Maybe there's a de minimis kind of explanation, Mercedes, but we don't need to address that here because I think we could find, as a matter of law, that it's not de minimis if you say that you sold it and, in fact, it's a bribe, a gift, whatever, from a crony. So how do you respond to that? It's earlier on the page below where you're talking about the specifically crime requirement. It's a more general falsity. So here's what I would say. I think the question is, could a properly instructed jury have concluded that if Fatah lied by calling this a car sale when it was really a gift, could a properly instructed jury have concluded that that lie was immaterial for purposes of 1344 or not intended to influence the bank for purposes of Section 1014? And I think there's certainly enough evidence in the record to allow a reasonable jury to make that determination because she said, I understand Your Honor's pointing to one answer that she gave. A falsity is no good. But then when pressed specifically on the type, you know, what would you have done with the truth? She gave very different answers when asked, well, what if it was a bribe? What if it was a gift? And a jury could have given effect to that difference in response and reason that, well, if it was a bribe, no question it was material to the bank. It was intended to influence the bank. But if it was a gift, the evidence is more equivocal. And a jury in that situation would not have been required to find, to convict on these two counts. Well, that then looks back to the beginning of my question. Apologies that, you know, the nature of this call, some stuff is getting lumped together, which is this is not a neater case. And you admitted you can't challenge the phrasing of particular elements. What you're challenging is certain factual recitations in count one that are being cross-referenced in 19 and 20, et cetera. So aren't we on abusive discretion review here? No, Your Honor, not at all. And I resist the suggestion that the argument is based on the argumentation to the jury. The argument and the challenge is based on the error, the admitted error in the jury's instructions on the law. Now, it was the jury's instructions on what is a bribe. But it was an error in the jury instructions. And the law is pretty clear, when there's an error in the jury instructions, what we ask, what the court asks is, did that error potentially contribute to the verdict, or was the verdict surely unattributable to the error? What neater case applies that to a case in which there is no error in reciting the elements, but merely some other, you know, allegedly prejudicial phrasing? I've not seen a case like that. Your Honor, I don't know what you mean by allegedly prejudicial phrasing. It's the error in the jury instructions. And the case I would point to is this court's decision on the last appeal when it dealt with money laundering. The jury instructions on money laundering were perfectly fine. One of the elements of money laundering is proceeds of unlawful activity. And so the court said, actually the court didn't say it, but it implied it, because it threw out the money laundering counts. Well, if the jury's finding of bribery is tainted, that may then have caused the jury to wrongly convict on money laundering as well, because the jury is using the finding of bribery to satisfy the element of money laundering. And the same is true here. But that's different, though, because that's a specified unlawful activity is the element at issue, and they're suggesting there wasn't a specified unlawful activity in the bribery after McDonald's. But here, as Judge Bevis was saying, the issue was was there a false statement, not why was it false. What was the motive for making it? So I don't know that the money laundering error that you're pointing to really maps onto the accurate application of the instructions here. Your Honor, I think there is a little difference, but I don't think it's a material difference, because in both situations, there's no error in the jury instructions defining the elements of the second offense. But the court recognizes that in the jury's consideration of the second offense, the jury is going to be looking at how it resolved the bribery offense, because the bribery offense is presented as a predicate. Now, with money laundering, it's a legal predicate. It's much more, you know, it has to be there. For bank fraud, it usually is not. However, and this is why we're invoking, and the reason why we're invoking the government's arguments to the jury and the court's description of the bank fraud scheme to the jury, in this case, the theory of fraud that was argued and charged was a theory of fraud that depended on a bribe, or at least that was the principal theory that the government argued was that the bribe... I've just gotten to the key point, which is, in the other context, in money laundering, it is a legal theory of guilt. My question, though, is, isn't your argument here that the instructions misstated a factual basis for guilt? Well, the jury instructions misstated the definition of bribery, and that could have led the jury to a flawed, factual basis to convict. That undermines the legal theory for the bribery charge, but for purposes of the charges that are issued here, it's a factual basis for those charges. And, correct? I think that's right, but I don't know why that would make any difference. Because Simon Griffin, on which you rely, are cases about a legal theory of guilt, and I don't see how you can rely on them where we're talking... It was fine for those to knock out the bribery and money laundering charges, but I don't understand how Simon Griffin gave you relief when the error is not a legal theory of guilt problem. Well, it's a legal theory of bribery problem that is then imported into these counts, and so that's why I don't see why it would make any difference. I think the fundamental principle of those cases is you trust the jury to go through the evidence, to sift the evidence, to weigh it, to determine if elements are satisfied, but if the jury instructions threw the jury off track legally in a way that might have affected the outcome, then we cannot rely on the jury's verdict on that count, and I think that's exactly true here. Let's talk about whether it threw them off. You're complaining that Count 19 and 20 cross-referenced Count 1, and Count 1 says explicitly it alleges this. Now, you have a couple of problems. The government's theory, I think, is this is just a shorthand for a bunch of stuff that they've argued happened factually, and the judge was very clear that this is not – the indictment itself isn't evidence. The judge sends the indictment back to the jury. You have given up any challenge to the sending back of the indictment. Even if there's some error here, isn't what the government is arguing in the instructions just basically the same as the indictment language to which you have no properly preserved objections, such that if there's an error, it's harmless then. It's just regurgitating an indictment to which you've not preserved a challenge. Your Honor, I don't think there's any problem with the indictment. The indictment says in Count 1, in its recitation, the same things you're objecting to now. And there's nothing wrong with that theory. If the jury is given the correct instructions about what a bribe is, the theory is fine. The theory was clear from the entire case, and there's nothing wrong with the theory. The theory was you concealed a bribe from the bank, and that tricked the bank into making the loan. That was the theory. That theory works if the jury is properly instructed on what is a bribe. But if the jury is misled about what is a bribe, that is an error, a legal error in the jury instructions that we can't just assume the jury figured out on its own. And, in fact, that's why the bribery and the money laundering counts have to be drawn up. Let's look at the false statement to a financial institution. Let's just take that one. In order to prove a particular defendant guilty of the offense of making false statements to a financial institution, the government must prove, one, that the defendant, under consideration, made or caused to be made a false statement to the credit union, two, that the defendant knew that the statement was false, three, that the false statement was made for the purpose of influencing the credit union's action and that the credit union was a financial institution. How does any error with respect to the bribery instruction or comments relating to the bribery matter in any way influence those four elements? They're not talking about criminal conduct. They're just talking about what you've got to do here to make a false statement. Right. So let me take them. There's two that it affects. One is falsity and one is the intent to influence or the materiality, depending on which county you're looking at. For falsity, I want to be very clear about how this works with the jury as wrongly instructed and then how it could work if the jury had been properly instructed. Pretend we're sitting in the jury room. The jury concludes the $18,000 was a bribe. It makes that conclusion based on the problematic jury instructions. The jury then comes to count 19 and says, was there a false statement? Yes, because it was a bribe and he didn't tell them it was a bribe. Check off the box for element one. And then the jury goes to the next element and says, was this intended to influence? Well, of course it was intended to influence. Fatan knew that the bank couldn't make him a loan if he was relying on criminal proceeds. It could be forfeited tomorrow. So he must have lied in order to influence the bank's decision. Check off element two. Now pretend the jury was properly instructed and the jury is going through this. And the jury concludes, as this court found last time, the jury could have. The money was not a bribe. None of these payments were bribes. So the jury comes to question one on count 19. Was there a false statement? Now the jury says, well, I'm not convinced there was a false statement. It wasn't a bribe. Maybe it really wasn't. Maybe it really was a legitimate car sale. But there was no basis for the jury to have reached that conclusion when the documents were nonexistent. The car remained in the possession of Mrs. Fatan. The jury couldn't have reached that conclusion. And in any event. I would very vigorously disagree with that, Your Honor. The paperwork was signed. There was a legal bill of sale contract signed. Now this court said last time. The jury had enough beyond a reasonable doubt evidence to conclude that that sale was a sham. Regardless of the motive for it. And apropos of what Judge Ambrose is asking you to focus on. How does the bribery issue for count 1 have anything to do with the elements of the false statement charge under 1014? Right. So I'm walking through the elements about falsity and about materiality and intense influence. With respect to your question about the false statement. Sure. A properly instructed jury could have concluded that the car sale was a sham. And that there was a false statement. Even if it wasn't a bribe. But a properly instructed jury easily could have concluded that it was not convinced that the car sale was a sham. There was paperwork. This court said last time. Well, totality of the circumstances the jury could conclude that it was a sham. But the jury wasn't obligated to find that it was a sham. I mean, actually we argued last time that the jury could not conclude that it was a sham. Because the contracts are sort of legally can't be false. But putting that aside. The question now is what could a jury have concluded? And I think it's absolutely clear that if the jury had been properly instructed on bribery. And therefore had not concluded that the $18,000 was a bribe. That jury could have concluded that there was no false statement. And therefore that element one is not checked off the list. And then moving to the next one. Intense influence. The jury easily could have concluded that the only reason Fatah decided to call this a car sale. Even if it was a sham. Okay. The only reason he decided to call it a car sale rather than a gift. Was because he didn't want to publicly disclose a gift from a lobbyist. And he didn't want to have to go deal with the ethics committee. But that it had nothing to do with the bank. And he was not trying to influence the bank. The bank would have been perfectly happy knowing that a millionaire gave him the money. And was not going to take it back. But he didn't want to say it was a gift. For completely different reasons. Although Ms. Souza said that she testified that if the transaction had been a gift. The credit union would have required additional paperwork. Such as a gift letter, proof of a donor's financial circumstances. Right. And a jury could easily have concluded that there would have been no difficulty getting that paperwork. The reason Fatah didn't want to call it a gift. And again this is just something. I'm not saying the jury had to reach this conclusion. But certainly a jury could have reached the conclusion. That the only reason Fatah didn't go through that process of providing a copy of Viderman's bank statement. Was because he didn't want to call it a gift because of his congressional ethics issues. And in fact, again I'm not making this up. This is the argument the government made to the jury. That as a U.S. Congressman. Fatah could not put on paper that he had received an $18,000 gift from a consultant. In the government affairs practice at a law firm where he reported to a lobbyist. So that's a $245,000 of J.A. So the government was actually saying. Yes, the reason he couldn't call this a gift. Was because of his congressional ethics issues. That would not satisfy. Or at least the jury could find that it would not satisfy. The intent to influence element of section 1014. And the materiality element of section 1344. The evidence, again. If it's a bribe. Everything then follows from that. Very smoothly and readily. If it's not a bribe. A jury could come out the other way. And so that's why the error in the jury instructions. On bribery. Flows through. To these counts. Just the same way as it flowed through. To the money laundering counts. And again, I don't even think the government is denying. Certainly didn't deny in its brief. That this error in the bribery instructions. Potentially contributed to the verdict. I think that's actually a good segue. To go to Mr. Zosma. Then we'll get you back in rebuttal. And then on rebuttal. If we have anything with respect to the sentencing. We'll get that done as well. Okay, sure. Thank you, your honor. Thank you. Thank you, your honor. Thank you. Robert Zosma on behalf of the government. The defense is presenting a moving target here. I read their brief. And I understood them to be saying that there was an error in the jury instructions. That necessarily is with respect to the bank fraud and false statement counts. That is linked to the incorrect instruction regarding bribery. And that's the reason that we're here. This morning Mr. Roth very clearly said, quote, the jury instructions were fine. End quote. And that really ends the matter. The bottom line here is that, and the questions have pointed this out, the instructions that were given regarding bank fraud and false statement were accurate and never were linked to the bribery instruction in any way. There is no point at which the district court in instructing regarding bribery said, and this is an essential part of the fraud charges as well. The argument this morning from Mr. Roth instead is that the government presented the factual theory to the jury. That if it's a bribe, that supports the falsity. Well, first of all, that wouldn't be controlling. But second, and also importantly, the government never said that. He is selectively quoting from the instructions. But from the closing argument, the government never stated that the fraud and false statement charges depended on the fact that there was a bribe and rather made very clear, as is consistent with the law, that what counts 19 and 20 were about were false statements to a bank, period. I think it's very important, and you can walk through the whole case, which I'd like to do just very briefly. If you look at the charge, for example, the indictment, I know Judge Bibas has correctly pointed out that there's been no objections to the indictment. But, in fact, the indictment makes very clear what the government's theory was throughout the case, which was as to Kuma, the false statement was in presenting this completely fake set of documents and this sham regarding the car sale in order to deceive it in making a mortgage decision. Because, of course, a lender always wants to know where the funds are coming from and whether the borrower has sufficient assets to carry a loan. I want to call the court's attention to first count 19. Count 19, the bank fraud charge, incorporates the relevant parts of count 1 that describe this whole affair, and specifically paragraphs 39 to 45 of count 1 is what describes the bribery by Viderman as well as his actions with Kuma. Paragraph 44, which is on page 46 of the appendix, paragraph 44 gives the government's theory regarding this. And what it says there is that the purpose of this was to ignore the fact that this was a bribe and that it was in violation of the gift rules and that Mr. Fattah was not disclosing it on intercongressional financial disclosure form. So I don't know where Mr. Roth gets what he suggested this morning, that the theory of this case was only dependent on the fact that it was a bribe. It was never only dependent on that. It would have made no sense if it were only dependent on that. And then if you look at count 20, which is the false statement charge, which of course does not rely to any degree on the fact of whether there's a bribe or not, count 20 is on page 99 of the appendix. And it lays out what the falsity was and simply says the falsity was that you gave a sham presentation to the lender regarding a car sale that never happened, period. That, of course, is consistent with the testimony of Ms. Souza. Ms. Souza confirmed for the government's theory that every which way this was a fraud on CUMA, regardless of whether it's a bribe or a gift. The question is not, as the defense has tried to suggest, oh, could you have pulled this off? If you had said it was a gift and you came up with the right documentation, would the loan have gone through? That's never been the standard, certainly for materiality under bank fraud. And the Letcher standard under Section 1014, the standard is would it be of interest to the bank? Would it influence the bank? And, of course, if you're going to the lengths that they went to here to pretend that a car was being sold that wasn't being sold, that's relevant. Could you have pulled it off if you had told the truth of, yeah, we created this fake document because we really don't want the House Ethics Committee to know that this gentleman is giving me $18,000, but he's really a millionaire and he really has the ability to do it? Yeah, maybe you could have pulled it off, but that has nothing to do with whether this is material or whether it's intended to influence the bank. I think the argument, as I understand it, that, in effect, we should be concerned that the categorization of the $18,000 throughout the trial was as a bribe and that the jury instructions for Count 1, any time you hear the word $18,000, you're going to think, oh, wait a minute, bribe. And, therefore, somehow it affects your thinking on Counts 19 and 20. Sure, I understand it. Right. The district court used the word bribery once in the RICO instruction when it was talking about bank fraud, saying that this was to disguise a bribery payment made by Mr. Miniman. I would suggest, Ron, if we drill down on this, that the question in McDonnell and that led to the reversal of some counts is specifically, did we meet the official act requirement? But if you stand back and just say, in colloquial terms, what was this? Even if these gentlemen are actually innocent under the law of bribery because, say, trying to get him an ambassadorship is not an official act or hiring his girlfriend, still, this is a sleazy transaction. I think any common citizen would agree with that, that having him give $18,000 to help Mr. Fattah buy this house, faking a car sale in order to cover it up, in order to have him not file the gift return. Yes, we can say under McDonnell, perhaps, this is not criminally prosecuted as a bribe. But there is nothing wrong with ever saying to a jury, there is basically a sleazy transaction happening here and they don't want CUMA to know about it. So it would still be a fair statement. But what we have to focus on right now is, was this jury incorrectly instructed? And I'm very happy in that regard that the court asked for the set of full instructions. I apologize for that shortcoming. We should have put the full instructions in the appendix because it's so revealing. When the court talked about bank fraud in the RICO charge and when it mentioned the word bribery once, it's really helpful to look at the order of these very lengthy, very comprehensive instructions by Judge Bartle. When he instructs and uses that word bribery, but then gives correct instructions on the bank fraud elements without mentioning bribery, he has not actually instructed on bribery yet. The bribery instruction, including the definition of official act, comes later when he gets to that racketeering act. There is nothing in these jury instructions that would tell the jury you need to be cognizant of whether this is legally a bribe. So as a legal matter, and this is why Mr. Roth said this morning, the jury instructions are accurate. As a legal matter, the jury was never told it had to find a bribe, certainly not with regard to the 1014 false statement charges, which weren't in RICO at all. And so then that just leaves us as a factual matter. Were we linking this to the absolute legal requirement that there was a bribe as defined by law? It's not in the indictment. It's not in the government's opening statement. In the opening statement, the government said it could show it was a bribe or a gift. It's not in Ms. Souza's testimony. She very clearly said, we care very much. If you look at the sequence here, she sent an email to Congressman Fattah saying, what's with this $18,000? And he responded in a very lengthy email saying, no problem, it was a car sale, $18,000, this is a Porsche that we've owned, et cetera. And she wrote back an email, page 206 of the appendix, saying, I'm sorry, Congressman Fattah, but we as a lender will require a bill of sale, a copy of the signed over title, and evidence of the wire transfer coming from the person that purchased this car. She did not say, oh, Congressman Fattah, just assure us that this is not a bribe as interpreted by the Supreme Court, and then everything will be okay. Nor did he respond, don't worry, this is not a bribe, that's all you need to know. What they needed to know was what they asked for. And what Mr. Fattah and Mr. Viedemann did was they lied about it, and they went to elaborate lengths to lie about it by creating these false documents. And then we get to the closing statement. And Mr. Roth has only quoted one line on page 241. I want to quote another. The prosecutor said, and I quote, Kuma would not have issued this mortgage if they had known that this was not a car sale, if they had known that it was just a gift or a favor or worse, a bribe payment. And Kuma would not have issued the mortgage if they had known that that bill of sale and that signed over title were false. That is the government's theory from beginning to end in this case. Not as the entire case, of course, but certainly as to counts 19 and 20. And the bottom line here is that there's nothing in the instructions that is in error in any way. But the word that's used is or a bribe payment. Correct. And so what we have here at worst is we have the government suggesting a factual theory to a jury that it then does not prove. That happens all the time. And as Judge Bibas has suggested, I mean, I could have an endless number of cases in which a party suggests an interpretation of evidence that is not correct. That doesn't get you a new trial. What gets you a new trial, and Judge Bibas has alluded to this, is under the sign line of cases is where you have an error in the instructions regarding the law where it's the judge telling the jury an incorrect theory, which then is not supported by the law. That simply did not happen here. I'll point out as an aside that sign, just to be clear, which is cited in the reply brief is overruled by the Supreme Court in Hedgepeth v. Polito, which is a 2008 case, which still applies the harmless error standard that would apply. But we don't get there. This error would be harmless given the way the whole case was presented. But we don't get there because there's simply never a statement by the judge that as a matter of law, this factual theory would be sufficient. It's not because, as Mr. Roth said, the jury instructions were fine. The other point I want to make, I don't know what my time is right now because I don't have the red lights in front of me.  Thank you, sir. The other thing I wanted to mention is this court's earlier decision that Judge Schwartz asked about. This court did consider this, and I think it's quite surprising to suggest that in that exhaustive, meticulous opinion that Chief Judge Smith wrote that this isn't covered. What the court did there, its explicit ruling, was that it was reversing the counts that related to bribery, and it was reinstating the counts relating to these two fraud counts. There's simply no way to do that without making the conclusion that the incorrect jury instructions regarding bribery, which is what undermined those other counts, are irrelevant to these two charges regarding fraud. Now, I know that the court did not explicitly make that statement regarding every last argument presented, but it's not just implicit. It's essential in the release that the court ordered, and that's why the money laundering charges were reversed. Money laundering, the explicit element, is specified on lawful activity, which is bribery in violation of federal law. If those charges fail, the money laundering charges fail. That's perfectly normal, and that happens all the time. One quote from this court's opinion that I want to cite that we quoted a number of quotations that support the fraud charges here, but one I don't know if we mentioned is on page 189 of the opinion. This is in 914F3rd on page 189, and that's where the court said, because the evidence supporting the tumor-related charges in counts 19 to 20 is sufficiently distinct from the RICO conspiracy, we conclude that Viderman's spillover argument is unavailing. Now, this is really interesting because the RICO conspiracy, and, of course, the court is reversing that conviction as to Mr. Fattah because of the bribery problem. It does not need to reverse it as to Mr. Viderman because the district court already took care of that. The district court granted a judgment of acquittal to Mr. Viderman on count two, the RICO conspiracy, and the government did not challenge that on appeal. But what's so interesting when he's arguing spillover is that the RICO conspiracy, as it applies to Mr. Viderman, is only about bribery. That was his alleged role in the RICO conspiracy. And, in fact, the reason that the district court vacated his conviction, and you can look at docket number 538, which is the district court's opinion granting a judgment of acquittal, is page 94 of that very lazy opinion. The reason is because the district judge said this whole bribery scheme is just not part of the RICO enterprise. The RICO enterprise is all about maintaining Fattah's standing as a political figure, paying off his mayoral campaign debts, but the bribery scheme is just about giving money to Fattah in exchange for actions that only benefit Viderman. So the Viderman part of RICO conspiracy is only bribery. And so if this court says that that evidence does not spill over and undermine his convictions because the KUMA-related evidence is distinct, that isn't necessarily the exact same argument that we're making here, which is that the KUMA charges are based on lying to a lender about the source of your funds for any number of reasons that you want to lie and cover it up in order to suggest that you're more financially solvent than you are. That's what those counts are about, and it's why they're totally separate. So there's no error in the jury instructions. There is no error in the government's presentation. There's no basis here, and that's why the district court correctly denied this motion. That's why this court correctly reinstated these charges. If there's any further comment on the sentencing, I can respond to that later. Just one quick question on sentencing. It doesn't appear that the district court considered the need to avoid potential sentencing disparities here. I don't know that that argument was specifically made. I think you can read from the court's very lengthy statement as to the obvious answer to that and what we explain in our brief, which is that this is not your ordinary garden variety, $18,000 fraud on a lender. To look at other cases, we would have to see other cases in which what you're covering up is nefarious conduct with the United States congressman. But that argument wasn't specifically stated, and I'm not sure that it's presented on appeal either. All right. I have no further questions. No, nor do I. No, thank you. Good. Thank you. Thank you. Mr. Ross? Thank you, Your Honor. So I said before that the government didn't deny in its brief that the jury's verdict on counts 19 and 20 might have been influenced by its predicate finding that the $18,000 was a bribe. And in Mr. Zausmer's presentation, he again did not deny that. Did not deny that the jury might have found that the $18,000 was a bribe. In fact, the jury did find that the $18,000 was a bribe as a result of the flawed jury instructions and that that predicate finding of bribery might well have contributed to its verdict on counts 19 and 20 by showing that the statement to the bank was false and that the statement to the bank was intended to influence the bank. But the point that we have on 19 and 20 is lying to a lender to get funds. What would have been, in your world, a fail-safe instruction on, let's say, pick the count 19, which is the false statements to a financial institution that I read before during the opening? What would have been a fail-safe instruction that would have passed muster then? Your Honor, our objection is to the definition of bribery. The fail-safe would have been to properly instruct on bribery. If the jury was properly instructed on bribery, then it would have reached a reliable determination about whether the $18,000 was a bribe. And if the jury had reached a reliable determination of whether the $18,000 was a bribe, then it could decide whether that also satisfied counts 19 and 20. You're saying if you get reversed on the bribery charge, ain't nothing you can do on counts 19 and 20 to make them okay? Correct, given the way this case was tried and argued. In other words, Mr. Zausmer admitted they had a factual theory. He said they had multiple factual theories. He admitted that one of their factual theories was that the money was a bribe, and he lied in a material way by concealing the bribe. But Mr. Zausmer then followed up by saying the key thing under the line of cases is the actual jury instruction by the jury. Right, right. He said this was their factual theory, and maybe they didn't prove it. The problem is not that they didn't prove it. In fact, there was sufficient evidence. The problem is that the instructions defining bribery were admittedly wrong and prejudicial. And so we have a factual theory that rests on a legal predicate, bribery, that was improperly charged to the jury. So the jury is wrongly instructed about what is a bribe, wrongly concludes that this money is a bribe, and he admits that one of their theories was that because the money was a bribe, it was a lie to say that it wasn't a bribe and it was material because criminal proceeds are bad. And in fact, I think your argument here, I get where you're going. But it's predicated in the idea that it is the legal finding of a bribe that does the work, whereas I think what we're saying is, okay, colloquially this is a bribe, but it doesn't meet the rigorous standards set forth by the Supreme Court in its line of bribery precedents, honest services, all these other things. So you have to show us, you have to explain why it is that it's not, that the jury might well have been taking this not in the colloquial sense, but the way it was being argued was that the legal finding of the bribery would have swayed them, even though, as your friend Mr. Zausman pointed out, there's no cross-reference of the two. The judge explained this count without mentioning bribery, and the government's closing argument was, well, it might have been a gift, worse yet, bribery, whatever it is, any of those things was enough to sway the bank. So you've got a steep hill to climb here. So I actually love that sentence that Mr. Zausman quoted, because they said in their closing argument, CUMA would not have issued this mortgage if they had known that it was just a gift or a favor, or worse, a bribe payment. Now why is it worse if it's a bribe payment? It's worse if it's a bribe payment because the representative of the bank specifically testified unequivocally if it's criminal proceeds, no good. It's clear as day. And when asked about gift, it was much more equivocal. That's why it's worse if it's a bribe payment. And it's entirely conceivable that the jury would have given that distinction some effect and said, oh, it's a bribe payment. Clearly material and intended to influence the bank. If the jury had not concluded that it was a bribe, and I mean that in the technical sense, an illegal payment, if the jury had said, well, the $18,000 was a legal payment, the question is, could that jury have then concluded that counts 19 and 20 were not proved beyond a reasonable doubt? The answer is yes. And if the answer is yes, I don't see how the verdicts on those counts can be sustained if we're admitting and acknowledging that the jury might have been influenced in finding those elements satisfied by a wrong instruction on the law. That is what the jury instruction cases say. If you're a juror and just sitting there and a judge says to you, okay, the government has to prove that Mr. Viderman made a false statement. It was false. Any way you look at it, it was false. It could be no matter what it is. It doesn't have to be a bribe. Two, that he knew it was false.  And that the bank was a financial institution, which later got clarified. If I'm a juror, I'm not thinking about a bribe. Well, Your Honor, I think on the third element you read, was it intended to influence the bank? I think a juror definitely could have been thinking about that. Was it intended to get the loan? Was it intended to get the loan? Right. I think the jury could definitely have been thinking about the difference between a legal and an illegal payment because the bank's representative was clear there is a difference, from their perspective, in illegal payments and illegal payments. And that's why the government, in its closing, uses the term worse to describe the bribe payment. Again, the idea that these were presented to the jury as completely independent things, I mean, we have cited throughout the trial, opening, closing, the charge, that they were tied together. But on JA 241, the statement was it could be one, two, or three, or worse three. Right. That's right, Your Honor. But if you're a juror, you're not sitting there saying, well, it's going to be a bribe. The government doesn't have to prove that there was a bribe in order to have a conviction under count 20. I agree. They don't have to. But it's one way they can. And as Your Honor pointed out, the closing pointed to a few different theories. Maybe it was a gift. Maybe it was a favor. Worse, maybe it was a bribe. So there are multiple theories being presented to the jury. One of those theories is tainted by the instructional error. And if the jury is presented with multiple theories, one of which is tainted by instructional error, that's a situation in which you give a retrial because we don't know if the jury was wrong. I'm sorry. The theory here is that Ms. Sousa said if it had been a gift, they would have required additional paperwork. Right. And there's no reason why that paperwork would not have been forthcoming. In other words, the jury sitting there could have said, they're sitting there thinking, what was going on with this sham car sale? Let's just assume it's a sham for now, although I think a properly instructed jury could have found it was not a sham. They did go back, as I recall, and backdated the transfer documents, did they not? They backdated it to the date of the sale, which I think is quite common. If you sell something on one day and you do the paperwork two days later, you put the date of the actual transaction. I don't think there's anything about that that would require a jury to find that it was a sham sale. I don't think we should talk too much about the document. That didn't really have a notary. Remember, there was testimony about that, I understand. I think there was a real question about the bona fides of that document. It's probably irrelevant about the motivation for why the paperwork was created. The jury was told, is there a false statement? The jury found there was falsity in those documents because there was no sale, regardless of whether it was motivated to obtain some benefit in exchange or not. I don't see how the existence of whether it was a bribe or not a bribe and the instructions have anything to do with whether the jury, who you acknowledge was properly instructional on the falsity of 1014, why it matters. Your Honor, I'd say it matters because they're not independent questions. Whether this was a bribe or not, and whether it was a legitimate car sale or not, are not independent inquiries. The jury was looking at this exchange and had to determine, was this A, a bribe, B, a gift, or C, a legitimate car sale? If the instructions are pushing them in the direction of finding that it's a bribe, that makes it less likely that they're going to find that it's a legitimate car sale. Again, let's assume it's not a legitimate car sale. The jury's just thinking about, why did they do this sham paperwork to make it seem like it was a car sale? The jury could have thought one of two things. One, they didn't want to admit illegal conduct because that would have been a no-no for the bank. Or two, Fatah, for political reasons, didn't want to disclose that he was taking a large gift from a lobbyist. But the jury was told motive is irrelevant. No, intent is not irrelevant. No, I said motive. That's right, but intent is an element of the offense. And the jury has to decide, what was Fatah's intent in not telling the truth? And if his intent was to trick the bank, it's a crime. If his intent was to avoid political problems from admitting a large gift, it's not a crime. And so that's why these are alternative theories. And a jury that determines that the $18,000 is not a bribe could certainly have then concluded that it was not intended to influence the bank. I'm not saying they had to. I'm not saying the evidence was insufficient. I'm saying there's a possibility that a jury that was properly instructed on bribery would not have come out this way because it would not have accepted the factual theory that was premised on an improper, erroneous instruction on the law. I have one question about the sentencing. I just want to make sure I understood your argument. Sure. Are you making only a substantive reasonableness argument, or are you making both procedural and substantive? I think it's principally a substantive reasonableness argument that the length of the sentence at 400% of the high end of the guidelines was not justified by the reasons given. Now, of course, when you're looking at substantive reasonableness, you're always looking at what were the reasons that this court gave. That's the only way you can determine if it's substantively reasonable. So we are talking about the explanation, but it's not like a procedural error in the sense of, oh, you got the guidelines calculation wrong or anything like that. I mean, the challenge is this is an extremely high sentence, unprecedented magnitude variance that this court has never before sustained from what we can tell. Although it's interesting. I think the guideline range was six months max, or high end, I should say. But the recommended sentence was a year and a day, so you start off twice the guideline range. That's right. And if the court had imposed that, we wouldn't be able to challenge it. We were willing to go above in order to get closure on this, and that led to the dismissal of the bribery counts. Then the court doubled that, twice what even the government asked for. So I think this is not – I'm not saying it's categorically impermissible, but it certainly raises, I think, a question about what's going on here. And I think what's going on here is – I have yet to be on a panel where we have since then overruled a district judge up or down. It's unusual. There's no question. But there's only been one case involving a 400% upward variance that I've seen in this circuit, and it was reversed. That also involved a situation where the court went above what the government had asked for, and that was the Lowry case, we say. And we have a situation here where nobody is even pretending that this sentence is justified based on the offenses of conviction. And we've now spent a long time talking about how – are Counts 19 and 20 distinct from this bribery? Yet when we get to sentencing, the court basically ignores the Counts 19 and 20. It has nothing to do with the bank. Nobody thinks this is a reasonable sentence for bank fraud. But we all know this case is really about bribery. In the case of the district court, he had the stipulation – he's not through the trial – but he also had a stipulation that counsel will offer to the court to consider for the full course of relevant conduct. So I think the district court had a basis to reach its conclusion outside the individual counts of conviction based just on the stipulation alone, don't you think? Well, I think the judge can – the judge, even without the stipulation, can look at this misconduct and make findings on what he thinks happened. He didn't actually mention the stipulation at all during the sentencing. So I have no reason to think he was relying on the stipulation at all. But – But to – Whether he was going over it in Watts is noted that, you know, a jury's verdict does not prevent a sentencing court from considering conduct underlying the acquitted charge so long as that conduct has been proved by a preponderance. That's right. Not beyond reasonable doubt. That's right. And there's nothing categorically impermissible about the court saying, well, I'm sentencing you on bank fraud, but I'm going to enhance your sentence because I think you also committed bribery. I think our problems with the way that was done here are, one, we don't have – you know, the explanation for the fact finding here is incredibly cursory. We have a few sentences about undermining democracy and faith in democratic institutions. I really have no idea what the court was finding about the bribery. Was it the whole scheme that had been charged? Was it just the $18,000? I don't know. And then I think given what happened here procedurally, I think we have a real tail wagging the dog problem where we can't really fairly say that this was – he was being sentenced for the offenses of conviction. He was being sentenced for bribery that he was not convicted of. And that's – you can tell that because of the degree of the variance, because it's the exact same sentence that had been imposed for the different counts in 2016, that the judge literally used the same language to justify the sentence as had been used in 2016. It was as if the appeal had never happened. No findings about how the bribery survived the appeal or reconciling the judge's rationale with this court's decision. It's just – we'll once again do a sentence on bribery, and I would point the court to Judge McConnell's decision in the Allen case cited in the brief. So that was a pretty good discussion of this tail wagging the dog problem where the reliance on the dismissed or acquitted conduct just goes too far and becomes unreasonable. I think that's really what our difficulty is. Mr. Roth, it's a little strange that you'd invoke that metaphor, which the late Justice Scalia pointed out had been cut short by Apprendi. That was Chief Justice Rehnquist's approach in that, you know, we have a bright-line rule that we apply under Apprendi and Blakely, not this caudal jurisprudence depending upon the breed of canine involved. There was an old doctrine about tail wagging the dog that came up under the sentencing guidelines that was different. I'm not using it in that technical sense. What I'm saying is, you know, reliance on dismissed conduct, I get it. It's okay.  And at some point you take it too far to the point that you're no longer really sentencing the person for the offense of conviction. And I think given the judge's explanation for the sentence here and the degree of the variance, I think that's what was going on, and I don't think that's permissible. All right. Thank you. Thank you to both counsel. It was extremely well-presented arguments by both of you. I would ask that a transcript be prepared of this oral argument and just split the cost, if you would, please. We will do that, Your Honor. Thank you so much again. Thank you. Privilege having both of you.  Take care, Your Honor.